VACARREZZA v. 567,000 GALLONS OF MOLASSES et al.

(District Court, E. D. New York. December 13, 1906.)

SHIPPING — CHARTER HIRE — ALLOWANCE TO TIME CHARTERER FOR DEAD FREIGHT.

A steamship was operated by a charterer for two or three years under a time charter and renewals thereof; the hire being paid at the end of each trip at a fixed rate per month on her registered tonnage. From time to time the charterer objected that she was not loaded to her full capacity by the master, but the charter hire was paid for such trips with knowledge of the amount of cargo she actually carried. Held, that any claim of the charterer on account of such shortage on such trips was foreclosed by such settlements, but that in a suit for charter hire for the concluding voyages which had not been paid, he was entitled to a deduction for the shortage of cargo carried on such voyages below her represented and actual capacity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 195.]

In Admiralty. Suit in rem for charter hire.

Ullo, Ruebsamen & Yuzzolino (Lorenzo Ullo, advocate), for libelant.

Wheeler, Cortis & Haight (Charles S. Haight, advocate), for claimant.

THOMAS, District Judge. The steamship Margaretha was chartered pursuant to a representation that she had a certain carrying capacity, to wit, "3,150 tons all told; loads 2,900 tons molasses." Whatever the obligation created by this representation, she had such capacity, and the charterers were by the charter entitled to the "whole reach, burthen, and passenger accommodation of the ship (not being more than she can reasonably stow and carry) * * * reserving only proper and sufficient space for ship's officers and crew, tackle, apparel, furniture, provisions stores, and fuel." The ship was operated during 1903, 1904, to August, 1905, under the charter, or the charter modified and extended. The ship carried the German flag, until in January, 1905, her register was changed, and she carried the Italian flag. Thereafter the charterer complained that the master would not load her to the capacity to which it was entitled, but stopped the loading when a certain draft was indicated by an English Plimsoll-mark which she bore. This complaint at times was justified; but at the end of each voyage, the account between the parties was scrutinized, an account stated, and the balance found due paid to the owner's agent. It is considered that such adjustment forecloses any claim on the part of the owner, that as to such voyages the ship did not carry an adequate cargo. The charterer and master knew at the end of each voyage the exact amount carried; the complaint of insufficient carriage had been made. The hire was "at the rate of 10 shillings British sterling per gross register ton, per calendar month, * * * and

at and after the same rates for any part of a month." The original charter was for four calendar months, with options for renewal, which the charterer exercised from time to time until April 25, 1904, when it was agreed that the charter should be "continued for a further period of 12 months," and "that the charterers shall have the option of continuing this charter for nine consecutive trips, trip by trip, on giving notice thereof to owners or their agents, 15 days previous to the expiration of the first-named time or any declared option, all other conditions same as present charter, except rate to be on new charter 9 shillings instead of 10 shillings as at present."

The above option was exercised for four trips, when the charter was discontinued. It is considered that in the absence of fraud or mistake, the statement and payment of the account at the end of each trip settled the existing and recognized differences between the parties. All hire was paid trip by trip, save that the charterer refused to pay for the ship's service for the last two trips, upon the ground that she had not while under the Italian flag carried a full cargo, and the charterer insisted upon a right to make deductions accordingly. The amount carried on the two last trips is known. It is evident that it was not in either case up to the carrying capacity of the ship, and the difference between such amount and 39,000 gallons should be credited to the charterer at the agreed rate per ton, and for the balance of the hire, subject to credits for coal and advances, the libelant should have a decree.